Yes, Your Honors. May it please the Court, my name is James Todd Bennett. I'm representing the Petitioner Eshwar Ram Misir in this proceeding. And I'd like to reserve two minutes for rebuttal out of my time here this morning. First question, I would like to first ask if the request for judicial notice as to File 0371273 would be granted in this particular case. I believe it's vital to the disposition here. Essentially, there are two issues after the briefing and the changes in the law that have occurred during the course of this proceeding. The two issues being, first of all, is the – does the Court have jurisdiction under the Real ID Act, Section 106C? And secondly, the question of whether the doctrine of res judicata applies, and if it does, is it trumped, if you will, by the doctrine of changed circumstances involving two changes in the law, first, a precedent decision in this Court under Cesares-Gutierrez, and then secondly, the actual Real ID Act itself, 106C, which extends the jurisdiction of this Court to consider the issue of the case which was not originally – had a basis for jurisdiction 0371273. I'd like to address the jurisdictional issue first, and I think that's paramount. In the Respondent's brief, it's flip-flop, but I think that obviously is the first issue at stake is jurisdictional. 106A, as the Court's well aware of the Real ID Act, eliminates habeas corpus review. However, 106C gives the – is a transfer statute in which pending habeas petitions in the district court are transformed into petitions for review as of the date of the enactment of the May 11, 2005, enactment. Alvarez-Barajas was decided by this Court after the Real ID was enacted, and Alvarez-Barajas basically extends that doctrine of 106C by logic and to avoid an absurdity to include petitions for review – excuse me, I'm sorry – direct appeals on habeas cases that are already pending in this Court before May 11th of 2005. Now, what the – I think the plain meaning of 106C is unavoidable. It clearly states in 106C of the Real ID Act that Section 8 U.S.C. 1252b1, the 30-day limit on files of petitions for review, does not apply. I would ask this Court to extend that same Alvarez-Barajas doctrine of already previously existing petitions to that same issue here. It would only make sense. It avoids an absurd result, which would be the consequences of what Respondent is asking in this case. Also, it avoids the constitutional issue of whether there is a due process or equal protection violation. Turning to the jurisdictional – excuse me, turning to the res judicata, new circumstances conflict, if you will. The first issue, and it's not really spelled out clearly in the brief, reply brief, but I would think it's noteworthy, is that the – there is an issue whether or not res judicata would apply at all, whether these are, in fact, the same issues. Now, the Court – the district court made it very clear that the petition was similar, but it didn't say it was identical and did not invoke the failure-to-exhaust doctrines that are set forth in the reply brief. It proceeded to go ahead and sua sponte, dismiss the petition, and hence this appeal. Now, Mr. Massur was proceeding in pro per at that point in time, and his four issues that he raises in his petition are, if we can, I think, a fair reading of his petition, which is a form with typewriters writing on it, is his first issue being a divisibility statute. I think what Mr. Massur is trying to ask the Court to do is review whether or not this conviction is an aggravated felony under a Taylor analysis, which I don't think even applies in this case. But I think the – what Mr. Massur is trying to flag the Court's attention to is that this is not an aggravated felony. His second issue was whether the State – the modification and the expungement eliminates the case as a – excuse me, as an aggravated felony before the Court. And then his fourth issue, and then there's a due process violation of the same alleged in his third. And then his final cause of action, he's basically talking about something that's beyond the purview of this Court's jurisdiction, which is ineffective assistance of counsel at the State. Out of all that, if we go back and look at Cesaro's to be saying is, is this is not a Federal analysis-type statute – excuse me, a sort of – under the State law, this isn't – couldn't be a felony because he's got less than a year's sentence, and it has, in fact, been expunged. When Cesaro's deterrence is enacted, it clearly states we need a uniform standard for Federal law. So I would submit that, to that extent, res judicata probably doesn't even apply. But if it does, in fact, apply in this case, I think it's trumped by the new circumstances that have clearly developed in this case. We look at Nunez, which is controlling precedent, and I don't think incompatible with the habeas corpus rules that existed before the AEDP – the Anti-Terrorist and Effective Death Penalty Act. Basically, all Nunez basically says in essence is if you go to the court of appeals, petition for review, aggravated felony alleged to – for the court to determine whether it has jurisdiction to determine its jurisdiction, and the court says, no, this is, in fact, an aggravated felony petition dismissed, you cannot go back and get your second bite of the apple in habeas corpus proceedings. It's alleged the same thing. It's a very sensible rule. It makes perfect sense. The difference in this case, first of all, is that the substantive law has changed in the course of this proceeding. And what has happened is under Cesaris-Guterres now, when the first petition was filed, the argument was, this is not an aggravated felony. It's been expunged, and besides, the sentence has been modified under State law. Cesaris-Guterres comes in and says we need a uniform standard. It's a completely different circumstance, different set of law, and since the petition is pending at the time that Cesaris-Guterres was decided, I think that the changed-circumstance doctrine clearly applies in this case. So under Cesaris-Guterres, is this an aggravated felony? No, it would not be. Why not? Because it's an 11-350, which is simple possession, and a simple --" even though under California law, it's a facial felony, under the Federal Equivalent Statute 844, it's not, because it's essentially a sentence that's less than that. What do we do with the statement in the by the BIA that he was convicted of a --" that this was his second conviction? What is that? What's the significance of that? I think they're mistaken, because the previous conviction was put in diversion. I think the record clearly shows that in the previous Petition for Review proceeding. He was put in diversion, in old California diversion, where you don't enter a plea. Now you have to enter a plea. But in those days, you didn't have to enter a plea. No plea was entered, so there never was a conviction. If that is the only other preexisting proceeding against him --" That's the 1993? What's the date of that conviction? I believe it's a 94. And it was a diversion and not an actual conviction, you're saying? Correct. And the record's not clear on that subject, but we can take judicial notice somehow of that? Is that what you're saying? The reference in the BIA opinion there is that there was this prior conviction, and hence, that triggers an aggravated felony under the Federal statute, whereas it would not be without that other conviction. But you're saying that it wasn't really a conviction, it was a diversion, but how can we find that? Well, it should be --" I think it's reflected in the minute orders. No conviction records are ever produced in this case. All we get are printouts from the court as to the dockets. So we don't have any charging documents. We aren't clear on what the disposition is as far as the final order. Second point, though, on that same issue, Fiera Gutierrez vs. Gonzales, or Ashcroft, rather, which is also a precedent decided after Cesares-Gutierrez, clearly says that two since 844 is a recidivist provision, two convictions anyway aren't going to be an aggravated felony anyway. So under a ---- We don't take that. FED-AS says we don't look at the recidivist provisions to determine whether something is an aggravated. You look at the punishment for the crime. Exactly. And then the last point being, I think Real ID Act now gives us jurisdiction to enter to this Court gives us jurisdiction. That's the second factor that requires new circumstances to be applied in this case over res judicata. I see my time's up. You're saying that there's two reasons why it's not a felony. One, because it was not a conviction. The first was not a conviction. Secondly, you've got this Ninth Circuit case that says that you don't look to the prior, the recidivism provision. There's a Ninth Circuit case on that subject, too. So you've got both arguments? Is that it? Exactly. And then I see my time is up. I'll let you have a minute to respond, to reply. Thank you, Your Honor. We'll hear from the government next. Good morning. Cynthia Parsons for the Attorney General. First, let me address the meat of the issue. Res judicata does apply, and this Court is precluded from remanding the case or otherwise determining that Petitioner is not removable. In fact, he's already been removed. In this case, the order of removal became final long before there were any of these changes that the Petitioner has alluded to. By the time Cazares-Gutierrez was adopted in final in August of 2004, Petitioner's order had already become final because the BIA had ruled on it. This Court had already dismissed a petition for review for lack of jurisdiction because the Petitioner had been convicted of an aggravated felony. The district court had already dismissed a habeas petition in which Petitioner alleged in part that his conviction was not an aggravated felony, and the Petitioner had been removed from the United States, so this final order had actually been executed January 21st, 2004. And so before this Court ever got to Cazares-Gutierrez and before Congress ever got to amending the statute under the Real ID Act, this Court had already ruled that his conviction was a crime of an aggravated felony. And because this Court had already ruled that it was an aggravated felony, when this Court later, after this final order had already been executed, found that a conviction for simple possession was no longer an aggravated felony, it did not apply to his case. Had the habeas action been appealed? Wasn't it still pending? He filed two habeas petitions. The first habeas petition was dismissed. Well, actually, they were both dismissed sua sponte. But the first habeas petition was dismissed in August of 2003, and the Petitioner did not appeal that decision. He did file a second petition for writ of habeas corpus on December 8th, 2003. Which was also dismissed sua sponte. That, he did appeal. Do you know why the district court dismissed the first petition? Yes. In part, it dismissed it because, relying on this Court's decision, dismissing the petition for review for the aggravated felony. So it didn't call for a response or anything? No. There was no response by the government. Quite often. It was sua sponte in both cases. Both the habeas petitions were dismissed sua sponte. So there was no response by the government to either one of them. So there would be nothing in the record from the government in either one of those cases. But the appeal from the second habeas was still live, wasn't it? Live at what time? Live before this. Actually, no, Your Honor. It was not. This Court issued an order to show cause, asking why it should not the second petition, the one that we're now all here for, should not have been dismissed for failure to prosecute. And there was no response, and, in fact, was dismissed. And that all happened before he was removed. It was reinstated, isn't that correct? It was reinstated. But by the time this Court reinstated it, he'd already been removed. So the order was final and executive. So did his removal deprive us of jurisdiction? Well What does that What does that It may not have deprived it of jurisdiction. However, it certainly shows that a final order was executed in reliance on a decision of this Court. This Court had said he was an aggravated felon, and, therefore, We made a mistake. Maybe we made a mistake. At the time you made it, that was the law of this circuit. No, when we dismissed the second petition for failure to prosecute. No, there was no That also was not an order. There was no response to your order to show cause. So that also was not. But we ultimately reinstated it, correct? You ultimately reinstated it. And it was pending. It was pending. The time of Casares Gutierrez came down. No. It was not. You did not withdraw the mandate and reinstate it until January 5th, 2005. Casares came out in August 20th, the final Casares, in August 24th, 2004. So, no, it was not pending. It was over. His BIA order was final by the Do we know when he had a He must have been a motion to reinstate or something. There was a motion to reinstate. I don't have that date. I do apologize. But there was the dismissal for failure to prosecute occurred on December 14, 2004. This Court's order reinstating or withdrawing the mandate and reinstating the appeal occurred on January 5th, 2005. So I think it's safe to assume that that motion occurred between December 2004 and January 5th, 2005. Casares came out in August 2004 before any of this happened. Well, then, what is the effect of the reinstatement? Regarding whether or not this Court has jurisdiction, there it is no effect. This Court is bound by its prior order. It can't reinstate. Yes. I'm sorry. I didn't. You did. Yes, you did. And, yes, you can. But as far as reexamining what already is At that time, then, don't we reconsider everything, all of the law that is then current? Not when the Court has already examined it and issued a final order that has been relied upon and executed. But what authority do you have for that? Well, for example, Teague v. Lane, a Supreme Court case which says that cases or new law announced in cases is prospective, that, in fact, in deciding Teague, the Supreme Court went into some detail in coming to their conclusion about retroactivity and, in doing so, relied on principles of civil law. At one point, and I quote, the Supreme Court states, Nevertheless, it has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule. That appears at page 308 of the decision. So, in other words, and there are decisions of this Court stating that a final judgment, a final civil judgment is undisturbed by subsequent cases regarding that same rule of law. Otherwise, nothing's ever final. If we were to say that now, because Cazares occurred, even after we have the government has already executed a final order of removal, based on an order from this Court, if we now say that, no, we can throw that all up in the air because there's a new case, there must be hundreds, perhaps even thousands, in this district, this circuit alone, of aliens who were ordered removed and, in fact, removed for possession of controlled substances when this Court determined that possession of controlled substances was an aggravated felony, to do otherwise, to now say, no, those final judgments are just not final, throws everything up in the air, and nothing's ever final. This Court has even said, and I cite the case in my brief in Ellingson, if subsequent case law disturbs the earlier case law and allows everybody to come back and get a second bite at the apple, nothing's ever final. So your basic argument on retroactivity and, hence, res judicata, is Teague v. Lane, essentially. That is a basic — that is a main basis for it, yes. That it's — and, in fact, they even based a lot of their decision on finality. If you'll recall, Teague v. Lane dealt with a — Kennedy. Teague v. Lane has an exception to the non-retroactivity rule of subsequent law, but you're saying that that exception doesn't apply here. It wouldn't apply here, yes. There was actually Justice Harlan. They adopted Justice Harlan's position, and actually Justice Harlan's position had two exceptions, neither of which would apply in this case. They're simply — it is prospective only. If the case were on direct appeal, then fine. You apply the new rule of law. However, it wasn't. He'd already been removed before Cazares was issued. It was — this Court had already dismissed the second or third PFR, and the mandate had not yet been recalled. So it was all over, done with, and final before. So that the subsequent habeas petition doesn't mean that it's a pending case to which Teague v. Lane wouldn't apply. You know, if the — it would — the rule would be that the law is retroactive insofar as a pending case goes. So you've got to establish that this case was not a pending case earlier. Actually, I would — I would rather say that the Petitioner has to establish that it was a pending case. And our argument would be they cannot do so because he — because Cazares had not been issued yet when this Court — or when he was removed. By the time this Court reinstated or withdrew the mandate and reinstated the petition, it was — he was already gone. He had been removed. What was the basis for the recall of the mandate? I do not know the specific basis for the recall of the mandate. I do apologize, Your Honor. I do have down in my notes that it was recalled. I do know — It would seem like that might be key. You couldn't recall it just — just from the standpoint of applying a new law, just like you say. But if it's recalled for some other reason, I think it's good. I apologize, Your Honor. If memory serves, this Court had issued an order to show cause why it should not just simply affirm the decision of the district court. There was no response. Thereafter, I believe, if I have this correct, and I am digging in my memory somewhat, the Petitioner got a new lawyer or got a lawyer, and this lawyer — and I believe it was actually Mr. Bennett or Mr. McGott — then filed, saying, well, he was pro se. He didn't respond. Please excuse it and allow us to recall the mandate. I believe that's what happened. And I'm sure Mr. Bennett will correct me if I'm wrong when he gets up for his — Wouldn't that be different than recalling the mandate just in order to, in your Parade of Horribles, that all of these other cases, if there's a new case comes out, they can call a mandate and follow the new law. If this was recalled for another reason, it would seem like that would be quite different. I would agree. That would be a different circumstance. And I do apologize for not having that right at the tip of my tongue, exactly why this Court recalled the mandate. I had a lot at the tip of your tongue. You did pretty well with it. Pardon me? I said you had a lot at the tip of your tongue, so you did pretty well with it. Well, thank you. I just said, I realize your time is — your time is over. Yes. I just — you know, I thought I had read your brief, and I was a little bit surprised about your emphasis on Teague v. Lange right now in this argument. And I look back at your brief, and it's only Teague v. Lange is cited once in a very passing kind of way. And you actually relied on Nunez v. Ashcroft, which I think is distinguishable from this case. Well, I think Nunez and Teague work hand in hand. First — But my only point was, I mean, I just — I was a little bit taken by your — your emphasis on Teague here. But nonetheless, we — you know, over your time, and we're going to hear from a reply. I'm going to give him a minute or so to respond to your arguments. Thank you, Your Honor. Thank you, though. Yes, Your Honor. First of all, I'd like to note that Zegarra-Gomez, as long as there's continuing concrete problems for Mr. Messier, this Court doesn't lose jurisdiction simply because he was removed. She's not really arguing loss of jurisdiction in this argument. She's arguing res judicata. She's arguing that there was a final judgment in the case, and he was removed, and now we have a new question, and that the prior disposition, although incorrect and according to subsequent opinion, governs under the doctrine of res judicata and Teague v. Lane. As I understand it, that's not a jurisdictional argument. Yes. And just one note. The day before he was removed, actually, Cesare's number one was decided. So it was decided before he was removed by one day. I was the mandate recalled. The mandate was recalled. If I remember correctly, I was the attorney of record at the time I failed the file. And I was undergoing some spelled out in the motion. But it has nothing to do with the day before. I mean, you failed to respond to the order to show cause that the Court had issued. The order to show cause, there was a delay in responding, and I accepted a late filing. And if I'm not mistaken, I'm not absolutely sure, and I didn't bring my entire portion of that file, but there may have been also a dismissal in December of 2004 for failure to prosecute at a time I was having extreme health problems. And this may have been one of those cases. I just cannot remember off the top of my head, but it should be reflected in the file, obviously. Kennedy. Would that mean, then, that because the mandate was recalled, that it would make this a pending case? I believe so. Under Teague v. Lane? I believe it would relate back, because one of the issues I think that's being ignored here in Teague v. Lane by opposing counsel is that the change with Cesare's is substantive. This is no longer an aggravated felony, and the case is, in fact, pending. And if the case is pending and there's a substantive change, then clearly the new circumstances doctrine has to apply. And it has to apply above the goes above the Well, there might be a due process question, too, if you say that there was no crime at the time of the so-called race euticado ruling. That was an error and there was no crime. In fact, then there might be a due process problem with having him effectively convicted. I don't know. True, if there was an expungement and the expungement was accepted as being the element, and if he doesn't have any other conviction that makes him removable. There's an alternative charge of removability, but what we'd be requesting for relief is for the remand so he could be heard on his 240A application, which is straight cancellation. Okay. Thank you. Thank you, Your Honor. This matter is submitted. Our next case is Nass.
judges: Hug, Merritt , Paez